**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

1ST AVENUE FUNDING,

    Plaintiff,

v.                                            Civil Action No. 12-13067-DT
                                          Honorable Denise Page Hood

FAIRCHILD HOLDINGS, INC., MICHAEL
L. HARMON and REBECCA A. HARMON,

    Defendants.
_____/

**ORDER DENYING EX-PARTE MOTION FOR**
**TEMPORARY RESTRAINING ORDER and DENYING**
**REQUEST FOR AN ORDER TO SHOW CAUSE WHY**
**A PRELIMINARY INJUNCTION SHOULD NOT BE ISSUED**

**I.    BACKGROUND**

On July 12, 2012, Plaintiff 1st Avenue Funding ("1st Avenue") filed a Complaint against Defendants Fairchild Holdings, Inc. ("Fairchild"), Michael L. Harmon ("M. Harmon") and Rebecca A. Harmon ("R. Harmon") (collectively, Defendants). The Complaint alleges the following counts: Breach of Contract (Count I); Fraud/Intentional Misrepresentation (Count II); Action for Accounting (Count III); Conversion (Count IV); Disregarding Business Entity Form (Count V); and, Request for Injunctive Relief (Count VI).

1st Avenue asserts that it entered into a Financial Consulting and Asset Management Agreement with Defendants on August 4, 2011. (Comp., ¶¶ 9, 12)  1st Avenue forwarded to Fairchild funds to be invested in various ventures. (Comp., ¶ 9)  1st Avenue claims that Defendants usurped the funds and have failed to provide an accounting of said funds, including a monthly profit summary. (Comp., ¶ 9)

On July 23, 2012, 1st Avenue filed the instant Ex-Parte Motion for Temporary Restraining Order and for an Order to Show Cause Why a Preliminary Injunction Should Not Issue. 1st Avenue seeks an order freezing any and all credit union accounts, bank accounts, investment accounts, trust instruments/accounts or any and all other assets of Defendants claiming that upon service of the complaint and summons in this matter, Defendants will take further steps to prevent 1st Avenue from recovering its one million dollar investment.

## II.     ANALYSIS

### A.     Motion for Temporary Restraining Order

#### 1.     Irreparable Injury

As authority for its request for a temporary restraining order, 1st Avenue cites Rule 65 of the Rules of Civil Procedure. Rule 65(b) provides the Court with authority to issue a temporary restraining order as follows:

> **(1)     *Issuing Without Notice*.** The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
>
> (A)     specific facts shown by affidavit or by a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition;
>
> (B)     the movant's attorney certifies to the court in writing any efforts made to give the notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b).

Rule 65(b) is clear that the possibly drastic consequences of a restraining order mandate careful consideration by a trial court faced with such a request. 1966 Advisory Committee Note to 65(b). Before a court may issue a temporary restraining order, it should be assured that the movant

has produced compelling evidence of irreparable and imminent injury and that the movant has exhausted reasonable efforts to give the adverse party notice. *Fuentes v. Shevin*, 407 U.S. 67 (1972); *Boddie v. Connecticut*, 401 U.S. 371 (1971); *Sniadach v. Family Finance Corp.*, 339 U.S. 337 91969); 11 Wright & Miller, Federal Practice and Procedure § 2951, at 504-06 (1973). Other factors such as the likelihood of success on the merits, the harm to the non-moving party and the public interest may also be considered. 11 Wright & Miller at § 2951, at 507-08; *Workman v. Bredesen,* 486 F.3d 896, 904-05 (6th Cir. 2007).

Addressing the irreparable injury requirement, it is well settled that a plaintiff's harm is not irreparable if it is fully compensable by money damages. *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992). However, an injury is not fully compensable by money damages if the nature of the plaintiff's loss would make damages difficult to calculate. *Id.* at 511-512. The Supreme Court addressed the issue of whether a district court has the authority to issue a preliminary injunction under Rule 65 for the purposes of protecting assets in anticipation of the judgment of the court. In *Grupo Mexicano de Desarrolo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999), the Supreme Court held that the district court had no authority to issue a preliminary injunction preventing a defendant from disposing of assets pending adjudication of a plaintiff's claim for monetary damages. *Id.* at 333. The *Grupo Mexicano* case involved a breach of contract claim for money damages by unsecured creditors of a group of investors who purchased notes involving a toll road construction. The Supreme Court recognized the case of the usual preliminary injunction where a plaintiff seeks to enjoin, pending the outcome of the litigation, an "action" that a plaintiff claims is unlawful. *Id.* at 314. The Supreme Court noted the difference between that injunctive relief and a preliminary injunction to protect an anticipated judgment of the court. *Id.* at 315. The

3

Supreme Court stated that if a district court enters a preliminary injunction to protect assets in anticipation of a judgment of the court, as opposed to enjoining an "act" by the defendant, the defendant is harmed by the issuance of the unauthorized preliminary injunction. *Id.* at 315. An unsecured creditor has no rights at law or in equity in the property of the debtor prior to judgment. *Id.* at 330. The only cases where an unsecured creditor can obtain preliminary injunctive relief to prevent a defendant from disposing of assets pre-judgment include situations where statutes permit the court to do so, such as in a bankruptcy action, or under the Securities Act, or under statutes authorizing tax injunctions. *Id.* at 326-328. Traditionally, courts of equity have not interfered with the debtor's disposition of his/her property at the insistence of a nonjudgment creditor. *Id.* at 329. A creditor must first obtain a judgment because a debtor has a right to a jury trial on the legal claim. *Id.* at 330. The Supreme Court noted that any prejudgment remedy may be sought under Fed.R.Civ.P. 64 which authorizes use of prejudgment remedies available under State law. *Id.* at 330-331.

In *Grupo Mexicano,* the Supreme Court answered the narrower question of "whether, in an action for money damages, a United States District Court has the power to issue a preliminary injunction preventing the defendant from transferring assets in which no lien or equitable interest is claimed." *Id.* at 310. The Supreme Court reasoned that historically, a court of equity could not issue such provisional relief in the context of an action for money damages. *Id.* at 1968-69 (noting the "general rule that a judgment establishing the debt was necessary before a court of equity would interfere with the debtor's use of his property"). The Supreme Court struck down the injunction issued by the lower court. *Id.* at 333.

Here, 1st Avenue is seeking a prejudgment asset freeze on Defendants' property. 1st Avenue

has not shown that it has a lien or equitable interest in the funds 1st Avenue forwarded to Defendants for investment purposes. Although there may be fraud at issue, 1st Avenue has not specifically alleged how the fraud occurred.

1st Avenue alleges in the Complaint that the parties entered into an agreement wherein Defendants were to invest $1,000,000 on behalf of 1st Avenue in various ventures. According to the affidavit of Richard C. Woonton, president of 1st Avenue, when it became apparent through a series of e-mails that M. Harmon and Fairchild were not being forthright as to the status of the investment funds, he requested a meeting with M. Harmon. (Woonton Aff., ¶ 4) The meeting was supposed to have occurred on May 31, 2012 but M. Harmon advised Woonton that the meeting was going to be canceled. (Woonton Aff., ¶ 4) Woonton "sensed" that when M. Harmon canceled the meeting, he had no intention of rescheduling the meeting, and that M. Harmon and Fairchild were acting fraudulently. (Woonton Aff., ¶ 6)

Woonton claims that he recently met with an agent of the Federal Bureaus of Investigation asserting that the FBI's preliminary finding was that the investment scheme was a sham and that Fairchild and the Harmons were engaging in fraudulent behavior. (Woonton Aff., ¶ 7) Woonton asserts that he has learned that the $1 million dollar investment was disbursed to five individuals/entities which were not a part of the agreement between 1st Avenue and Fairchild. (Woonton Aff., ¶ 8) Woonton claims he is not aware of the status of the investment and believes that there are other persons who are assisting the Harmons in usurping the $1 million dollar investment. (Woonton Aff., ¶ 9) 1st Avenue fears that upon service of process in this matter, Fairchild and the Harmons will take more extraordinary steps to dissipate 1st Avenue's investment funds. (Woonton Aff., ¶ 11)

Allegations of fraud must comply with Rule 9(b) of the Rules of Civil Procedure, which provides, "a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). A plaintiff is required, at minimum, to "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendant; and the injury resulting from the fraud." *Bucciarelli v. Nationwide Mut. Ins. Co.*, 622 F. Supp. 2d 809, 815 (E.D. Mich. 2009). Allegations of fraud "must be made with sufficient particularity and with a sufficient factual basis to support an inference that they were knowingly made." *Id*. A misrepresentation claim requires the defendant to have made a material fraudulent misrepresentation. *Hi Way Motor Co. v. Int'l Harvestor Co.,* 388 Mich. 330, 336 (1976).

Woonton's affidavit is insufficient to show fraud at this time since he has failed to allege the time, place, and content of the alleged misrepresentation on which 1st Avenue relied. Woonton only asserts he "senses" a fraud has occurred. Even if 1st Avenue is able to show fraud, no authority has been cited by 1st Avenue to support its request for an asset freeze based on a claim of fraud. Although a significant amount of funds is at issue, 1st Avenue has not shown it will suffer irreparable harm as required under Rule 65(b) and in light of the *Grupo Mexicano* Supreme Court case.

**2.     Certification**

As to the certified notice requirement under Rule 65(b), 1st Avenue's counsel did not submit such a certification.

**B.     Order to Show Cause Why a Preliminary Injunction Should Not Issue**

1st Avenue also seeks an Order to Show Cause Why a Preliminary Injunction Should Not

Issue. E.D. Mich. LR 65.1 provides that a request for preliminary injunction must be made by a separate motion and not by an order to show cause. 1st Avenue may file a separate Motion for Preliminary Injunction under Fed. R. Civ. P. 65(a), which requires a notice to the opposing party. Fed. R. Civ. P. 65(a).

### III.   CONCLUSION

For the reasons set forth above,

IT IS ORDERED that 1st Avenue's Ex-Parte Motion for Temporary Restraining Order **(Doc. No. 6, filed 7/23/2012)** is DENIED.

S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated:  July 26, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 26, 2012, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager

7